Kirkpatrick C. J.
This is, upon the whole, rather a singular proceeding. It is set forth in the state of demand, and indeed it appears also from the return of the justice, that an action had been instituted before one Johnson Dunham, esq. one of the justices of the peace of the county of Sussex, by one Thomas Shields against Jacob Kerr, esq. the defendant in certiorari, and one James Kinney ; that judgment had been rendered therein for the plaintiff, for 100 dollars; and that execution had been issued thereupon, and put into the hands of Jacob Hevener, the present plaintiff, who was then a constable; that in the settlement of this execution, the said Jacob Hevener had, by order of Shields the plaintiff, demanded, and actually received, from the said Kerr, the sum of 6 dollars, 92 cents, over and above the sum due on the execution, by way of discount, as he calls it, to make it equal to York currency; that the said Kerr, in order to recover back this 6 dollars, 92 cents, instituted a suit against Hevener, before one Barnabas Swayze, esq. also one of the justices of the peace of the said county of Sussex; but that for some mistake in his proceedings, he became non-suited therein; that Hevener, immediately upon the entry of the nonsuit, served a summons upon the said Kerr, *65 purporting to be issued by the said Johnson Dunham, esq. requiring the said Kerr to appear, &c. at a certain tii'ne'- and place, therein mentioned, to answer him, the said Hevener, in an action for damages, amounting to 2 dollars, 99 cents (being the expense he had been put to in the action before Swayze) which said summons was returned by Hevener himself, in his own name, and upon his oath of office, he being then still a constable ; that judgment was finally entered in this action, against Kerr, he having never appeared therein, for the said sum of 2 dollars, 99 cents damages, and 2 dollars, 71 cents costs, and that execution was issued thereupon, and put into the hands of one Daniel Ulp, a con*stable, who received the money from the said Kerr, together with his execution fees, amounting in the whole to 6 dollars, 20 cents. And to recover back these sums of money, viz. the 6 dollars, 99 cents received by Hevener himself in Shields’ action, and the 6 dollars, 20 cents received in his own action, together with the interest, this suit was brought. And not contented even with this, Kerr, in his state of demand, claims double the amount of these two sums, being for double damages, which he says, the law allows in cases of this kind.
The defendant did not appear on the day of trial. The justice inspected the receipts and papers exhibited to him, without being in any way proved or authenticated, there being no witness sworn, and then proceeded, as he says in his return, to render judgment by default for the sum of 27 dollars.
Now it has repeatedly been determined, that a justice cannot render a judgment final by default. If the defendant, having been lawfully summoned, do not appear, and no sufficient reason be assigned, why he does not appear ; then, says the statute, the said justice shall proceed to hear and determine the cause, in the absence of the defendant. To'hear ; that is, to investigate upon lawful evidence, and not otherwise. And this too, is upon the same principle with the proceedings of the higher courts, in actions of this nature; for though in them, judgments are every day entered by default, yet those judgments are interlocutory only, and not final. They establish the plaintiff's right *66 of action, but by no means the amount of his damages. must be ascertained afterwards; either before a jury 0f inquiry, or by the court on assessment, but in both cases, on lawful evidence only.
In this, therefore, the justice has erred.
But besides. There is error, not only in the procedings of the justice, but there is a radical defect in the case itself. It affords no lawful cause of action. For
i In the first place, as to the discount taken upon Shields execution. It is fairly to be deducted from the face of the receipt sent up, that this payment was in bank bills, and not in money. . Now it is to be observed, that no man is obliged to receive bank bills of any kind, in payment of debts; at least, this was the case on the 11th of January, 1817, when this receipt' is dated. If the creditor does receive such bills, therefore, he does it gratuitously and by way of accommodation, and he himself has a right to pre*scribe the terms of accommodation. In this case, it appears that the plaintiff, Shields, did so prescribe; and the sum demanded by way of discount, appearing on the face of the statement, under which the receipt is written, it is manifest that the defendant, Kerr, yielded to such prescription, and agreed to pay such discount accordingly; and especially so, as there is no pretence that the money was raised by the sale of property, or that it came into the hands of Hevener otherwise than by a direct payment. Moreover, it is perfectly well known, that there had existed a difference between New-Jersey and New-York, bank bills, and that even those of New- York have been much below par in the public market. How far this was the case, at the time of this transaction, is not known, but so far as it was so, it was just that the difference should be made up by the defendant; and having voluntarily done so, he can never come into a court of justice to reclaim that difference. And above all. Hevener, the constable having fairly stated the terms upon which, and upon which alone, the plaintiff Shields, would take the bank bills, and the defendant Kerr, having paid upon those terms, if he could reclaim at all, it must be from Shields, the plaintiff, and not from Hevener the constable.
In the second place. However erroneous the proceed *67 ing of Johnson Dunham, the justice, may have been in Ilevener’s action against Kerr, in suffering the party serve his own process, and to return it in his own name and on his own official oath (as he says) as a constable, and in entering judgment upon such return, in the absence of the defendant, yet still it was a judgment, and that judgment must prevail until it be regularly vacated, or reversed by some competent authority. To suffer judgments to be called in question, in the way that has been attempted here, would be subversive of all principle, as well as all order and justice.
Upon the merits of the case, therefore, as well as upon the form of the proceedings, this judgment must be
REVERSED.